1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAYMOND HAFLIGER,

                        Plaintiff,

        v.

GEORGIA PACIFIC CONSUMER
PRODUCTS (CAMAS)  LLC, et al.,

                        Defendants.

CASE NO. C15-5807 BHS

ORDER DENYING
DEFENDANT'S MOTION TO
DISMISS

        This matter comes before the Court on Defendant Georgia Pacific Consumer

Products (Camas), LLC's ("GP") motion to dismiss (Dkt. 21). The Court has considered

the pleadings filed in support of and in opposition to the motion and Plaintiff Raymond

Hafliger's ("Hafliger") amended complaint (Dkt. 1-2) and hereby denies the motion for

the reasons stated herein.

## I. PROCEDURAL HISTORY

        On July 31, 2015, Hafliger sued GP and other defendants in Clark County

Superior Court for the State of Washington. Dkt. 1-2. On November 6, 2015, GP

removed the case to this Court. Dkt. 1.

1    On November 20, 2015, GP filed a motion to dismiss Hafliger's claims. Dkt. 14.

2  On January 22, 2016, this Court granted GP's motion but also granted Hafliger leave to

3  amend his complaint. Dkt. 17 at 5.

4    On January 29, 2016, Hafliger filed an amended complaint in which he asserted

5  three claims: premises liability, breach of the safe workplace doctrine, and a violation of

6  the Washington Industrial Safety and Health Act ("WISHA"), RCW 49.17.06. Dkt. 18 at

7  5–6.

8    On February 12, 2016, GP filed a motion to dismiss Hafliger's safe workplace

9  doctrine and WISHA claims. Dkt. 21. On February 19, 2016, Hafliger responded. Dkt.

10  22. On March 11, 2016, GP replied. Dkt. 24.

11                          **II.  FACTUAL BACKGROUND**

12    Walsh Trucking employed Hafliger as a truck driver. Dkt. 18 at 1. Walsh Trucking

13  contracted with GP to deliver sawdust at GP's paper mill site. *Id.* at 2. In performing this

14  contract, on August 3, 2012, Hafliger drove a truck and delivered sawdust to GP's mill

15  site. *Id.* at 4.

16    After this delivery and while on GP's mill site, Hafliger needed to use the

17  restroom. *Id.* GP had instructed truck drivers to use certain portable restrooms located on

18  GP's mill site. *Id.* at 3. In addition, GP instructed truck drivers to not block driveways or

19  other equipment while on the mill site. *Id.* Hafliger located one of these designated

20  restrooms. *Id.* at 4. In following these instructions, Hafliger parked his truck at the bottom

21  of a ramp, so he could access one of the portable restrooms. *Id.*

22

1    As Hafliger stepped out of his truck, he rolled, twisted, and fractured his ankle. *Id.*

2    Hafliger alleges he suffered injuries because GP neither marked the sloped ramp nor

3    provided sufficient lighting in the ramp area. *Id.*

4    Hafliger alleges GP required him to follow certain procedures at its mill site. *Id.* at

5    2. For instance, Hafliger alleges, before and after delivery, GP required a driver to check

6    in with its security and weigh the truck. *Id.* at 2–3. Further, Hafliger asserts GP's security

7    directed a driver where to deliver the goods and provided the driver with a security card

8    and key to access the delivery site. *Id.* at 3. Hafliger also alleges GP's security directed

9    Hafliger how to deliver the goods by instructing him to back the truck's trailer onto the

10   tipper, unload the goods, and hook the trailer if necessary. *Id.* In addition, Hafliger

11   alleges GP required a driver to drive below a speed limit. *Id.*

12                              **III. DISCUSSION**

13   **A.    Standard**

14   Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move to

15   dismiss for either the lack of a cognizable legal theory or the absence of sufficient facts

16   alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699

17   (9th Cir. 1990). The Court takes material allegations as true and construes the complaint

18   in plaintiff's favor. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).[1] To survive a

19   motion to dismiss, the complaint does not require detailed factual allegations but must

20   _____

21   [1] GP asserts that the Ninth Circuit decided *Smith* before the Supreme Court clarified the pleading requirements in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Dkt. 24 at 2–3. GP argues that *Smith*'s "continuing relevance should

22   be questioned." *Id.* at 3. However, other than pointing out the dates of the opinions, GP fails to explain how *Smith* is inconsistent with *Twombly* or *Iqbal. Id.*

1    provide the grounds for entitlement to relief and not merely a "formulaic recitation" of

2    the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965

3    (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on

4    its face." *Id.* at 1974.

5    **B.    Safe Workplace Doctrine and WISHA**

6    **      1.      Safe Workplace Doctrine Claim**

7           The parties dispute whether Hafliger pleaded sufficient facts to show GP retained

8    control over Hafliger's work while on GP's mill site.

9           The safe workplace doctrine requires an entity to keep common work areas safe if

10   it retained control over "some part of work" completed by a worker at its site. *Afoa v.*

11   *Port of Seattle*, 176 Wn.2d 460, 477–478, (2013). The safe workplace doctrine places this

12   duty on an entity with retained control because it is in the best position to control safety.

13   *Id.* at 477. In addition, an employer cannot avoid the safe workplace duty "by reference to

14   formalistic labels such as 'independent contractor . . . .'" *Id.* An employer does not retain

15   control when it has a general right "to order the work stopped or resumed, to inspect its

16   progress or to receive reports, to make [nonbinding] suggestions or recommendations . . .,

17   or to prescribe alterations and deviations." *Kamla v. Space Needle Corp.*, 147 Wn.2d 114,

18   121 (2002) *quoting* RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965). On the other

19   hand, an employer retains control if a "contractor is not entirely free to do the work in

20   [contractor's] own way." *Id.*

21          Hafliger alleges GP retained control because GP directed Hafliger to deliver the

22   goods according to its procedures. Dkt. 18 at 2–4. For example, GP directed drivers

1   where to dump sawdust based on what tipper could best handle the current load of

2   sawdust, GP directed the drivers how to dump the load, GP set speed limits while on the

3   premises, and GP directed the drivers to weigh the truck and trailer before and after

4   dumping the load of sawdust. *Id*. At the very least, these allegations, if true, show that GP

5   retained control over delivery of every specific load.  While some allegations are similar

6   to the independent contractor in *Kamla*, other allegations show that GP "may have had a

7   duty to maintain safe common work areas and that the existence of this duty depends on

8   factual issues best resolved at trial . . . ." *Afoa*, 176 Wn. 2d at 475. Therefore, the Court

9   concludes that Hafliger has stated sufficient allegations to state a claim for relief under

10   the safe workplace doctrine.

11        Despite Hafliger's allegations regarding his work at GP's mill site, GP argues that

12   Hafliger's attempt to use GP's portable restroom was not within his course of

13   performance. Dkt. 21 at 8. As Hafliger correctly points out (Dkt. 22 at 7), GP offers no

14   authority for this argument (Dkt. 21 at 8).[2]  Therefore, the Court declines to entertain

15   GP's argument that an employer is not liable for a safe workplace when the claimant

16   injures himself accessing the provided restroom.

17        **2.     WISHA Claim**

18        In order "to ensure worker safety . . . [,]" WISHA creates certain duties for an

19   employer. *Afoa*, 176 Wn.2d at 470. One of these duties requires an employer to comply

20

21        [2] The parties dispute whether a workers' compensation case is relevant to this case. Dkt. 22 at 7; Dkt. 24 at 5. Regardless, the Court relies on Hafliger's alleged facts to determine if

22   sufficient facts show Hafliger acted within his course of performance when he attempted to use GP's portable restroom.

1    with WISHA regulations. *Id.* at 471. An employer owes this duty to "*any* employee who

2    may be harmed by the employer's violation of the safety rules." *Id.* (emphasis in

3    original). But "jobsite owners have [this duty] . . . only if they retain control over the

4    manner in which contractors complete their work." *Id.* at 472.

5          In arguing to dismiss Hafliger's WISHA claim, GP relies on the same arguments it

6    made to dismiss Hafliger's safe workplace claim. Dkt. 21 at 10–11. The Court already

7    addressed GP's arguments. Thus, Hafliger alleged sufficient facts to show a plausible

8    WISHA claim.

9                                    **IV. ORDER**

10         Therefore, it is hereby **ORDERED** that GP's motion to dismiss (Dkt. 14) is

11   **DENIED**.

12         Dated this 21st day of March, 2016.

13

14                                            _____
                                              BENJAMIN H. SETTLE
15                                            United States District Judge

16

17

18

19

20

21

22